## 38839. JONES v. THE STATE.

PER CURIAM.

Jones was indicted along with three other men for the murder of Elizabeth Williams in Toccoa, Georgia. Prior to his own trial Jones testified for the state in each of the other cases which were tried separately. The alleged triggerman, James Castell, was convicted and sentenced to death. Donald Addison and Raymond McJunkin who allegedly hired Castell to kill Mrs. Williams were each acquitted in their trials. After a motion for change of venue was granted Jones was tried in Habersham County. The district attorney who prosecuted the other cases disqualified himself in this case and the prosecuting attorney's council was assigned to prosecute.

The jury convicted Jones of murder and he was sentenced to life imprisonment. His sole enumeration of error on appeal is that the evidence is insufficient under the standard of review required by Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to support a finding of guilt for the crime charged beyond a reasonable doubt.

At the onset of the trial the parties stipulated that the cause of death was by gunshot and that Castell was the triggerman.

The state's main witness was an agent with the Georgia Bureau of Investigation who had begun investigating the case on the day of the shooting, July 31, 1980. On that morning, Mrs. Williams' husband had arrived at work and then decided to return home because he had forgotten his thermos. When he came home he found his wife's body and the authorities were called in.

The bulk of the agent's testimony consisted of his reading into evidence a statement given by Jones after he was in custody. According to Jones, Castell, who is related to him by marriage, had asked him on July 30, 1980, to drive him to Toccoa the next morning. He stated that he did not know why Castell needed to go to Toccoa and didn't ask. He had driven Castell to Toccoa before and had been paid $100. He knew Castell was recently released from prison in South Carolina and had no car or driver's license.

Jones said in his statement that he thought Castell might be involved in a scheme to steal trucks and that was the reason for the Georgia trips. Early in the morning of July 31, 1980, Jones drove Castell to Toccoa. He claimed that he did not ask the purpose of the trip. Jones stated that Castell asked him to stop at a phone booth and then got out and made a call. Castell then returned to the car and directed him to a house. According to the statement Castell went to the door and Jones heard a woman invite him inside. Jones remained in the car. He heard two gunshots, Castell came out and they drove

back to South Carolina.

On the afternoon of July 31, Castell asked Jones to take him back to Toccoa. Jones agreed. As they approached Georgia, a radio news program reported the shooting of Mrs. Williams in Toccoa. Jones stopped the car at Castell's request at Lake Hartwell and Castell handed him a gun and directed him to throw it into the lake, which he did. They continued to Toccoa where he took Castell to Roger Dean's garage, left him there and then went to another station to have a flat tire fixed. Castell had told him he needed to meet McJunkin at the garage. Jones got his tire fixed and returned to pick up Castell and they drove back to South Carolina again. On the trip back Castell gave Jones $200. According to Jones, Castell said he wanted to give him the money for getting him involved.

In his statement Jones stated that on the prior occasions he drove Castell to Toccoa, Castell picked up envelopes containing $1,000 in cash from inside a wrecker owned by McJunkin. He never asked Castell what the money was for. He stated he did not go to authorities sooner because he was afraid of Castell.

The other state's evidence connecting Jones to the crime was the testimony of neighbors of Mrs. Williams. They stated that on the night before the murder a car which was similar to the one owned by Jones drove slowly down their street and was occupied by two men. They were unable to identify Jones as being one of the men. Jones had denied in his statement that he was in Toccoa on that day.

At the close of this evidence, the defense moved for a directed verdict of acquittal which was overruled by the trial court.

The first witness for the defense was Mr. Stockton, the district attorney who had prosecuted the three co-indictees. He stated that Jones had been cooperative and had been consistent in maintaining that he had no prior knowledge of the plan to murder Mrs. Williams. Stockton stated that he never used a witness for the prosecution unless he believed him to be truthful. He also testified that he had agreed with Jones' defense counsel to a polygraph examination which could be used at the trial.

A polygraph examiner with the GBI testified as to the results of the test performed on Mr. Jones. The purpose of the tests was to determine if Jones had prior knowledge of the murder of Mrs. Williams and had helped plan it. According to the polygraph exam, Jones was not being deceptive when he denied prior knowledge of the murder.

Jones then testified himself and the testimony was consistent with his earlier statements. He stated that he had met Donald Addison once at Roger Dean's garage on one of the prior occasions he had driven Castell to Toccoa. He testified that during the period they

were at the garage he only talked with Addison a few minutes and that the subject of the conversation was Addison's running for office and discussion of a relative's bond which Addison helped with several years earlier.

The state presented a witness in rebuttal who testified that he had seen Addison, Castell, and Jones at the garage the week before Mrs. Williams was killed. He said the three men were together about 30 to 40 minutes. He did not see them talking but said they were "close around" although not exactly together during that period.

The state contends that the evidence is sufficient to make Jones a party to the crime under Code Ann. § 26-801(b) (3) and (4) in that he intentionally aided, abetted, encouraged or counseled Castell in the commission of the murder of Mrs. Williams. Jones contends that he cannot be a party to the crime of murder because proof of the necessary intent is lacking.

The committee notes to Code Ann. § 26-801 point out that the offenses of principal in the second degree and accessory before the fact were incorporated into the definition of parties to a crime. The elements of proof that one is a party to a crime or an accomplice requires proof of a common criminal intent. *Lamar v. State,* 137 Ga. App. 407 (224 SE2d 69) (1976); *Springer v. State,* 102 Ga. 447 (30 SE 971) (1897). The present Code Ann. § 26-2503 encompasses the old offense of accessory after the fact and makes it a felony for one to hinder the apprehension of a person known to be guilty of a felony or to destroy or conceal evidence of the crime. *Moore v. State,* 240 Ga. 210 (240 SE2d 68) (1977). Jones contends that he had no prior knowledge of the murder and that the only crime which he could be convicted of is a violation of Code Ann. § 26-2503.

Criminal intent may be inferred from one's conduct prior, during, and after the commission of the crime charged. *Jones v. State,* 242 Ga. 893 (252 SE2d 394) (1979). The state contends that there is sufficient evidence of the conduct of Jones to infer prior knowledge, and therefore the intent to commit murder. We agree.

Jones acknowledged that he drove Castell to Toccoa on previous occasions for cash payments. He was seen prior to the murder in the company of Castell and an alleged co-conspirator. He knew Castell had received large cash payments. After Jones admittedly had knowledge of the murder he accepted another $200 payment and he personally disposed of the murder weapon. There was also evidence to infer that Jones knew the location of the Williams' residence and had been in Toccoa the night before the murder, facts which Jones denied at trial.

The credibility of all testimony is for the jury which may reject that part of defendant's statement that he was not a participant in

the criminal scheme. *Berry v. State,* 248 Ga. 430 (283 SE2d 888) (1981). The above evidence was sufficient to enable a rational trier of facts to find Jones guilty of murder beyond a reasonable doubt.

*Judgment affirmed. All the Justices concur, except Clarke, J., who dissents.*

DECIDED SEPTEMBER 23, 1982 —
REHEARING DENIED OCTOBER 5, 1982.

*Oliver & Oliver, Timothy P. Healy, Robert F. Oliver,* for appellant.

*V. D. Stockton, District Attorney, Charles T. Shean III, Assistant District Attorney, Wayne Mangum, Michael J. Bowers, Attorney General, Janice G. Hildenbrand, Staff Assistant Attorney General,* for appellee.

CLARKE, Justice, dissenting.

Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979) dictates that on review the appellate court must decide whether the evidence is such that a rational trier of fact could find all of the elements of the crime beyond a reasonable doubt. This constitutional standard requires more than *any* evidence and is not satisfied by a "modicum" of evidence tending to prove a fact. See Jackson at 320.

In my opinion the evidence presented at trial does not establish prior knowledge of the plan to murder Mrs. Williams beyond a reasonable doubt, a necessary element to make Jones a party to the crime. There is evidence from which it could be found that Jones had knowledge that Castell was planning an auto or truck theft. However, the state did not proceed on the theory of felony murder, or that the murder was the natural consequence of a conspiracy to commit some other felony. To support the conviction under the state's theory of Jones' guilt, malice murder, it was necessary to prove beyond a reasonable doubt that Jones had prior knowledge of the murder. The only crime supported by the evidence in this case is a violation of Code Ann. § 26-2503. I would hold that the trial court erred in failing to enter a judgment of acquittal on the murder charge and therefore respectfully dissent.